# EXHIBIT 1

HD: Received by
E. Banda 4/13/25
Electronically Filed 6/6/2025 9:21 AM
Sarah Loucks, District Clerk
Bastrop County, Texas
By: Krystyn Johnston, Deputy

465-850

CAUSE NO._____

| | | |
|---|---|---|
| FREEDOM MORTGAGE CORPORATION | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § | |
| JAMES SNYDER, DER RESIDENTIAL COMMUNITY, INC. DBA DOUBLE EAGLE RANCH RESIDENTIAL COMMUNITY, AND THE UNITED STATES OF AMERICA ON BEHALF OF THE SECRETARY OF VETERANS AFFAIRS | § § § § § § § § | BASTROP COUNTY, TEXAS |
| Defendants. | § § § | _____ JUDICIAL DISTRICT |

## ORIGINAL PETITION FOR FORECLOSURE

Plaintiff Freedom Mortgage Corporation files this its *Original Petition for Foreclosure* against defendants James Snyder, DER Residential Community, Inc. dba Double Eagle Ranch Residential Community, and the United States of America on Behalf of the Secretary of Veterans Affairs, and shows the Court as follows:

### DISCOVERY

1.      Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.

### SPECIFIC STATEMENT OF RELIEF

2.      Plaintiff seeks only monetary relief of $250,000 or less and non-monetary relief.

### PROPERTY

3.      This lawsuit concerns the real property and improvements commonly known as 307 Double Eagle Ranch Dr, Cedar Creek, TX 78612 ("Property"), and more particularly as follows:

---

ORIGINAL PETITION FOR FORECLOSURE                                                  PAGE 1

**LOT 3, BLOCK L, DOUBLE EAGLE RANCH, SECTION 2, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT CABINET NO. 6, PAGE 153A, PLAT RECORDS, BASTROP COUNTY, TEXAS.**

## PARTIES

4.      Plaintiff Freedom Mortgage Corporation ("Freedom" or "Plaintiff") is the mortgagee of a loan agreement comprised of a debt and a first lien deed of trust lien securing the repayment of the debt. With respect to the Property, Plaintiff is the mortgagee of record of a deed of trust lien, as "mortgagee" is defined in Texas Property Code section 51.001(4).

5.      Defendant James Snyder is a record owner of the Property and a obligor of a loan agreement who may be served with process at 307 Double Eagle Ranch Dr, Cedar Creek, TX 78612, or at such other place as James Snyder may be found. Citation is requested.

6.      Defendant DER Residential Community, Inc. dba Double Eagle Ranch Residential Community is the subordinate HOA for the Property with a recorded lis pendens who may be served with process through its registered agent Preferred Association Management Company at 700 Market Street, Building 3, Cedar Park, TX 78613, or at such other place as it may be found. Citation is requested. This defendant is in rem only.

7.      Defendant the United States of America on Behalf of  the Secretary of Veterans Affairs is record junior lienholder on the Property who may be served with process by delivering copies of the process and petition to United States Attorney Margaret Leachman at 601 NW Loop 410, Suite 600, San Antonio, Texas 78216, or an Assistant United States Attorney or clerical employee designated by the United States Attorney in writing filed with the clerk of the court in which the action is brought, and by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia. *See* 28 U.S.C. §2410(b). Citation is requested. This defendant is in rem only.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction because the relief sought is within the jurisdiction of this Court. This Court has jurisdiction over defendants because defendants are either record owners of the Property or lienholders on the Property, which is located in Bastrop County, Texas.

9.     Venue is proper in this court because the real property at issue in this lawsuit is located in Bastrop County, Texas. CIV. PRAC. REM. CODE § 15.011.

## FACTS

10.     On or around May 26, 2021, defendant James Snyder purchased the Property as evidenced by a deed recorded as document number 202110860 in the real property records of Bastrop County, Texas. A copy of this deed is attached as **Exhibit A**. To purchase the Property, James Snyder took out a loan from CMG Mortgage, Inc dba CMG Financial and executed a Note in the principal amount of $530,000.00 ("Note") payable to CMG Mortgage, Inc dba CMG Financial and assigns as lender on a loan secured by the Property. A copy of this note is attached as **Exhibit B**. The repayment of the debt was secured by a first lien deed of trust ("Deed of Trust") granted to Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for CMG Mortgage, Inc dba CMG Financial, its successors and assigns as by James Snyder and recorded as Instrument Number 202110861 in the real property records of Bastrop County, Texas. A copy of the Deed of Trust is attached as **Exhibit C**. The Note and Deed of Trust are referred to herein collectively as the "Loan Agreement."

11.     Plaintiff is entitled to enforce the Note and is the beneficiary of the first lien Deed of Trust (together with the Note, the "Loan Agreement") pursuant to a series of assignments recorded in the real property records of Bastrop County, Texas as document numbers 202216687

ORIGINAL PETITION FOR FORECLOSURE                                    PAGE 3

and 202505077. A copy of the assignment is attached as **Exhibit D**. As the assignee of record, Plaintiff is the mortgagee of the Deed of Trust, as defined by Texas Property Code § 51.0001(4).

12.    On or around February 25, 2023, defendant James Snyder granted the Secretary of Veterans Affairs a junior deed of trust lien ("Junior Deed of Trust"), which is recorded as Instrument Number 202306822 in the real property records of Bastrop County, Texas. A copy of the Junior Deed of Trust is attached as **Exhibit E**.

13.    On or around July 31, 2023, Defendant DER Residential Community, Inc. dba Double Eagle Ranch Residential Community recorded a Notice of Lis Pendens ("Lis Pendens") referencing their lawsuit filed as Cause No. 2458-21 and styled as *DER Residential Community, Inc. dba Double Eagle Ranch Residential Community v. James Snyder* in the 21st District Court5 of Bastrop County, Texas in the real property records of Bastrop County, Texas as instrument number 202311436. A copy of the Lis Pendens is attached as **Exhibit F**. The lawsuit is still ongoing.

14.    James Snyder defaulted on the payment obligations of the Loan Agreement. On March 7, 2025, a notice of default and intent to accelerate with the required opportunity to cure was mailed by certified mail to James Snyder's last known mailing address in accordance with the Loan Agreement and the Texas Property Code. A copy of this notice is attached as **Exhibit G**. The default was not cured.

15.    On May 21, 2025, a notice of acceleration of loan maturity was mailed by certified mail to James Snyder's last known mailing address in accordance with the Loan Agreement and the Texas Property Code. A copy of this notice is attached as **Exhibit H**. The total amount of the debt good through June 12, 2025 is $410,422.18. A copy of the payoff statement is attached as **Exhibit I**.

## CAUSE OF ACTION –
## JUDGMENT ALLOWING NONJUDICIAL FORECLOSURE

16.    Due to defendants James Snyder's material breach of the Loan Agreement, their failure to cure, and the acceleration of the Loan Agreement debt as set forth above, Plaintiff seeks an order from this Court allowing it to enforce the Deed of Trust against the Property through nonjudicial foreclosure pursuant to the terms of the Loan Agreement and Texas Property Code section 51.002. A judgment allowing nonjudicial foreclosure will be the most efficient and equitable method of judicial sale, as it is the subject of well-defined statutory procedures and will maximize any surplus available to the owner and lienholder defendants following completion of the first lien Deed of Trust foreclosure.

### ALTERNATIVE CAUSE OF ACTION – JUDICIAL FORECLOSURE

17.    In the alternative to a judgment allowing a nonjudicial foreclosure sale, Plaintiff seeks a judgment for judicial foreclosure providing that Plaintiff recover the Loan Agreement debt, damages and costs, with a foreclosure of the Deed of Trust lien interest on the Property. Together with the judgment for judicial foreclosure, Plaintiff seeks the issuance of an order of sale to a sheriff or constable, directing the sheriff or constable to seize and sell the Property in satisfaction of the Loan Agreement debt; and, if the collateral does not sell for an amount sufficient to satisfy the Loan Agreement debt, the sheriff or constable should proceed to execute on other property of James Snyder as in ordinary judgment execution.

### CAUSE OF ACTION – QUIET TITLE

18.    Plaintiff further requests that the Court enter a judgment quieting title to the Property to the exclusion of the Junior Deed of Trust and the interest of all defendants by declaring that, upon completion of the judicial sale—either by a nonjudicial foreclosure sale or by a sheriff

sale—the winning bidder at the foreclosure sale shall take title free and clear of any interest or lien rights held by the defendants.

## CAUSE OF ACTION – WRIT OF POSSESSION

19.    If Plaintiff is the winning bidder at a foreclosure sale and any defendant or someone through any defendant occupies or claims possession of the Property after transfer of all right, title, and interest in the Property in favor of Plaintiff, Plaintiff requests a writ of possession against the occupant.

## ATTORNEY FEES

20.    Because of the material breach of the Loan Agreement, Plaintiff is entitled to recover reasonable and necessary attorney's fees under the terms of the Loan Agreement. Attorney's fees are not sought as a personal judgment against the defendants, but only as an additional debt secured by the Deed of Trust.

## PRAYER

For these reasons, Plaintiff Freedom Mortgage Corporation requests that defendants be cited to appear and answer, and the Court enter judgment:

a.    Allowing Plaintiff to enforce its Deed of Trust lien on the Property through nonjudicial foreclosure pursuant to the terms of the Loan Agreement and Texas Property Code section 51.002;

b.    Alternatively, entering a judgment for judicial foreclosure providing that Plaintiff recover the Loan Agreement debt, damages and costs from James Snyder with a foreclosure of its Deed of Trust lien on the Property; that an order of sale shall issue to any sheriff or any constable within the State of Texas, directing him or her to seize and sell the Property as under execution, in satisfaction of the judgment for

the recovery of the Loan Agreement debt; and that if the collateral does not sell for an amount sufficient to satisfy the Loan Agreement debt, the sheriff or constable should proceed to execute on other property of James Snyder as in ordinary judgment execution;

c.      Quieting title to the Property by ordering that, upon completion of the authorized judicial sale—either by a nonjudicial foreclosure sale or by a sheriff sale—the winning bidder at the foreclosure sale shall take title free and clear of any interest held by the defendants, including the Junior Deed of Trust held by the Secretary of Veterans Affairs;

d.      Awarding attorney fees and costs of suit; and

e.      Granting all other relief, in law and in equity, to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Bradley J. Conway*
**Bradley J. Conway**
Texas Bar No. 24055340
bconway@mgs-legal.com
**Mutunda K. Osafo**
Texas Bar No. 24123081
mosafo@mgs-legal.com
**Dustin C. George**
Texas Bar No. 24065287
dgeorge@mgs-legal.com
**MILLER, GEORGE & SUGGS, PLLC**
6080 Tennyson Pkwy. Ste. 100
Plano, Texas 75024
Phone: (972) 532-0128
Fax: (214) 291-5507
*Attorneys for Plaintiff Freedom Mortgage Corporation*

# EXHIBIT A

**ELECTRONICALLY RECORDED**

**OFFICIAL PUBLIC RECORDS**



Rose Pietsch

ROSE PIETSCH, County Clerk

Bastrop Texas

May 26, 2021 02:35:21 PM    **202110860**
FEE: $34.00
DEED

PLATINUM TITLE

GF _____ ██████████

# SPECIAL WARRANTY DEED
## [with Third Party Vendor's Lien]

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS § 

KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF BASTROP §

THAT **CLAYTON PROPERTIES GROUP, INC., a Tennessee corporation now doing business as BROHN HOMES** (hereinafter referred to as "Grantor", whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor in hand paid by:

**JAMES SNYDER, a Single Man**

(hereinafter referred to as "Grantee", whether one or more), the receipt and sufficiency of which are hereby acknowledged and confessed, and for the further consideration of the execution and delivery by said Grantee of one certain Promissory Note in the original principal sum of **Five Hundred Thirty Thousand and No/100 Dollars ($530,000.00)**, bearing even date herewith, payable to the order of **CMG MORTGAGE, INC. d/b/a CMG FINANCIAL** (hereinafter referred to as "Mortgagee"), bearing interest at the rate therein provided, said Note containing an attorney's fee clause and various acceleration of maturity clauses in case of default, and being secured by Vendor's Lien and Superior Title retained herein in favor of said Grantor and assigned to Mortgagee, and also being secured by a Deed of Trust of even date herewith from Grantee to **THOMAS E. BLACK, JR., Trustee(s)**; and

WHEREAS, Mortgagee has, at the special instance and request of Grantee, paid to Grantor a portion of the purchase price of the property herein described, as evidenced by the above described Promissory Note, said Vendor's Lien and Superior Title against said property securing the payment of said Promissory Note are hereby assigned, transferred and delivered without recourse to Mortgagee, Grantor hereby conveying to said mortgagee the said Superior Title to said property, subrogating said Mortgagee to all rights and remedies of Grantor in the premises by virtue of said lien;

And Grantor has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY, unto said Grantee, the following described real property, to-wit:

**Lot Three (3), Block L, Double Eagle Ranch, Section 2, according to the map or plat thereof recorded in Plat Cabinet No. 6, Page 153A, Plat Records, Bastrop County, Texas.**

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging unto said Grantees, their heirs, executors and administrators FOREVER. Grantor does hereby bind itself and its successors and assigns, TO WARRANT

Page 1

AND FOREVER DEFEND, all and singular the said premises unto the said Grantees, their heirs, executors and administrators, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Grantor, but not otherwise.

This Deed is executed, delivered and accepted subject to all and singular any liens securing the payment of any debt created or assumed in connection herewith if such liens are described herein, ad valorem taxes for the current and all subsequent years, subsequent assessments for prior years due to changes in land usage or ownership, zoning ordinances, utility district assessments and standby fees, if any, applicable to and enforceable against the above described property, and all valid utility easements created by the dedication deed or plat of the subdivision in which said real property is located, covenants, restrictions common to the platted subdivision in which said real property is located, mineral reservations, maintenance fund liens, if any, applicable to and enforceable against the above described property as shown by the records of the County Clerk of the County in which said real property is located, and any title or rights asserted by anyone, including, but not limited to persons, corporation, governments, or other entities to tidelands, or land comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs, or oceans, or to any land extending from the line of the harbor or bulkhead lines as established or changed by any government or to filled-in lands, or artificial islands, or to riparian rights or other statutory water rights, or the rights or interest of the State of Texas or the public generally in the area extending from the line of mean low tide to the line of vegetation or the right of access thereto, or right of easement along and across the same, if any, applicable to and enforceable against the above-described property.

But it is expressly agreed that the Grantor herein reserves and retains for himself, his heirs and assigns, a VENDOR'S LIEN as well as the Superior Title, against the above described property, premises and improvements, until the above described Promissory Note and all interest therein have been fully paid according to the terms thereof, which this Deed shall become absolute.

When this Deed is executed by more than one person, or when the Grantee is more than one person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed correspondingly, and when executed by or to a legal entity other than a natural person, the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns." Reference to any gender shall include either gender and in the case of a legal entity other than a natural person, shall include the neuter gender, all as the case may be.

*[SIGNATURE APPEARS ON THE FOLLOWING PAGE]*

DATED the _____ day of May, 2021.

CLAYTON PROPERTIES GROUP, INC., a Tennessee corporation now doing business as BROHN HOMES

By: _____
GREGORY RANDALL BARBER, JR.
Assistant Secretary

Grantee's Mailing Address:

307 Double Eagle Ranch Drive

Cedar Creek, Texas 78612

THE STATE OF TEXAS                    §

COUNTY OF TRAVIS                      §

This instrument was acknowledged before me on this the _____ day of May, 2021, by GREGORY RANDALL BARBER, JR., as Assistant Secretary of **CLAYTON PROPERTIES GROUP, INC., a Tennessee corporation** now doing business as BROHN HOMES, on behalf of said corporation.

_____
NOTARY PUBLIC

_____
Printed Name of Notary

My commission expires:

_____

JENNIFER STEWART
Notary Public, State of Texas
Comm. Expires 02-23-2023
Notary ID 126016728

Page 3

# EXHIBIT B

Loan Number: ███████

███████████████

# NOTE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

May 26, 2021                           **Cedar Creek, TEXAS**

**307 Double Eagle Ranch Dr**
**Cedar Creek, TEXAS 78612**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $530,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CMG MORTGAGE, INC. dba CMG FINANCIAL. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on July 1, 2021. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2051, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**CMG MORTGAGE, INC. dba CMG FINANCIAL**
**3160 Crow Canyon Road, Suite 400**
**San Ramon, CA  94583**

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,306.59.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

---

**TEXAS FIXED RATE NOTE** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
amended for **Veterans Affairs**
IDS, Inc. - 30070

Page 1 of 3

Form 3200  1/01
Amended 6/00

Borrower(s) Initials ___

Loan Number: ███████████        MIN: ███████████
                                 Case Number: ███████████

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box)

☐ Graduated Payment Allonge        ☐ Other (Specify)        ☐ Other (Specify)

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

---

TEXAS FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200  1/01
amended for **Veterans Affairs**                          Page 2 of 3                      Amended  6/00
IDS, Inc. - 30070                                                    Borrower(s) Initials _____

Loan Number: ███████████                                    MIN: ███████████████
                                                            Case Number: ███████████

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)            _____ (Seal)
James Snyder              -Borrower                                         -Borrower

                                                                   *(Sign Original Only)*

Loan originator (Organization): **CMG MORTGAGE, INC. dba CMG FINANCIAL; NMLS #:** ██████
Loan originator (Individual): **Christopher Ray Minjarez; NMLS #:** ███████

Pay to the order of

Without Recourse

**CMG MORTGAGE, INC., dba CMG FINANCIAL**

By : _____

Name:_____
        Christina Van Zyl
        Assistant Secretary

Title:_____

Loan Number: ███████

# VA ASSUMPTION POLICY ALLONGE TO NOTE
# (with Guaranty Clause)

VA Case Number: ███████

## NOTICE:  THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

This Allonge is made this 26th day of May, 2021, and is incorporated into and shall be deemed to amend and supplement the Note ("Note") of the same date herewith, given by the undersigned ("Borrower") to evidence Borrower's indebtedness to

**CMG MORTGAGE, INC. dba CMG FINANCIAL**

its successors and assigns ("Lender") which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date and covering the Property described in the Security Instrument and located at

**307 Double Eagle Ranch Dr**
**Cedar Creek, TEXAS 78612**
(Property Address)

Notwithstanding anything to the contrary set forth in the Note, Lender and Borrower hereby acknowledge and agree to the following:

**GUARANTY:** Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. code "Veterans Benefits," the Lender may declare the indebtedness due under the Note and secured by the Security Instrument at once due and payable and may require immediate payment in full or may exercise any other rights hereunder or take any other proper action as by law provided.

**TRANSFER OF THE PROPERTY:** If all or any part of the Property or any interest in it is sold or transferred this loan may be declared immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is approved by the Department of Veterans Affairs or its authorized agent pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) **ASSUMPTION FUNDING FEE:** A fee equal to one-half of 1 percent (.50%) of the unpaid principal balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the Lender or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already due under the note and secured by the Security Instrument, shall bear interest at the rate herein provided, and, at the option of the Lender of the indebtedness due under the Note and secured by the Security Instrument or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) **ASSUMPTION PROCESSING CHARGE:** Upon application for approval to allow assumption and transfer of this loan, a processing fee may be charged by the Lender or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the lesser of the maximum established by the Department of Veterans Affairs for a loan to which section 3714 of Chapter 37, Title 38, United States Code applies or any maximum prescribed by applicable State Law.

(c) **ASSUMPTION INDEMNITY LIABILITY:** If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Mortgagor(s) has executed this Allonge.

| | |
|---|---|
| _James Snyder_ _____ 5/26/21 | _____ |
| James Snyder            Date | Date |

VA Assumption Policy Allonge to Note (with Guaranty Clause)    Page 1 of 1
IDS, Inc. - 41673

# EXHIBIT C

**ELECTRONICALLY RECORDED**

OFFICIAL PUBLIC RECORDS



*Rose Pietsch*

ROSE PIETSCH, County Clerk
Bastrop Texas
May 26, 2021 02:35:21 PM    **202110861**
FEE: $106.00
DTRUST



PLATINUM TITLE.
GF.

After Recording Return To:
**CMG MORTGAGE, INC. dba CMG FINANCIAL
3160 Crow Canyon Road, Suite 400
San Ramon, CALIFORNIA 94583**

This instrument was prepared by:
**Black, Mann & Graham, L.L.P.
2905 Corporate Circle
Flower Mound, TX 75028**

Loan Number: ▇▇▇▇▇▇▇

_____ (Space Above This Line For Recording Data) _____

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

VA Case Number: ▇▇▇▇▇▇▇

MIN: ▇▇▇▇▇▇▇
SIS Telephone #: **(888) 679-MERS**

**NOTICE:** THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **May 26, 2021**, together with all Riders to this document.

(B) **"Borrower"** is **James Snyder, A Single Man.** Borrower is the grantor under this Security Instrument.

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
Page 1 of 14

IDS, Inc. - 30242

Form 3044  1/01 (rev. 10/17)

Borrower(s) Initials _JS_____



**(C) "Lender"** is **CMG MORTGAGE, INC. dba CMG FINANCIAL**, organized and existing under the laws of **CALIFORNIA**. Lender's address is **3160 Crow Canyon Road, Suite 400, San Ramon, CALIFORNIA 94583**. Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D) "Trustee"** is **THOMAS E. BLACK, JR.** Trustee's address is **2905 Corporate Circle, FLOWER MOUND, TEXAS 75028**.

**(E) "MERS"** is **Mortgage Electronic Registration Systems, Inc.** MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument. MERS** is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026**, tel. **(888) 679-MERS**.

**(F) "Note"** means the promissory note signed by Borrower and dated **May 26, 2021**. The Note states that Borrower owes Lender **FIVE HUNDRED THIRTY THOUSAND AND NO/100 Dollars (U.S. $530,000.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2051**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ VA Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |
| ☐ Other (Specify) | | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

---

**TEXAS**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**                    Form 3044  1/01 (rev. 10/17)
Page 2 of 14

IDS, Inc. - 30242                                                                 Borrower(s) Initials ___

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **Bastrop**:

**Legal description attached hereto and made a part hereof**

Parcel ID Number: ██████

which currently has the address of     **307 Double Eagle Ranch Dr**
                                       **Cedar Creek, TEXAS 78612**                                       ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's

check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
IDS, Inc. - 30242

Form 3044   1/01 (rev. 10/17)

Borrower(s) Initials

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS

Form 3044  1/01 (rev. 10/17)

Page 7 of 14

IDS, Inc. - 30242

Borrower(s) Initials _JS_

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the

sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, and property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and

---

**TEXAS**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**                   Form 3044   1/01 (rev. 10/17)

IDS, Inc. - 30242                                                                 Borrower(s) Initials ⨍⨍

opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.**

Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled.to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X]  **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ]  **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ]  **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ]  **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this

---

**TEXAS**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**
IDS, Inc. - 30242

Form 3044  1/01 (rev. 10/17)

Borrower(s) Initials

Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    -Witness        _____    -Witness

_____    (Seal)           _____    (Seal)
James Snyder                                -Borrower                                                    -Borrower

STATE OF ___TEXAS___ ___, _Travis_____ County ss:

The foregoing instrument was acknowledged before me this ___26___ day of __May__, 2021
by **James Snyder**.

Witness my hand and official seal.

My Commission Expires: 11/9/2024

Notary Public

(Seal)

IVY MOUNSEY
Notary ID #6457737
My Commission Expires
November 9, 2024

Loan originator (Organization): CMG MORTGAGE, INC. dba CMG FINANCIAL, NMLS #: ███
Loan originator (Individual): Christopher Ray Minjarez, NMLS #: ███

---

**TEXAS**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**
Page 14 of 14

IDS, Inc. - 30242

Form 3044   1/01 (rev. 10/17)

Borrower(s) Initials _JS_

# EXHIBIT D

**ELECTRONICALLY RECORDED**

**OFFICIAL PUBLIC RECORDS**



KRISTA BARTSCH, County Clerk
Bastrop Texas
July 26, 2022 02:42:43 PM    **202216687**
FEE: $26.00
ASSIGNMENT

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Regarding this instrument, contact Cenlar FSB. 425 Phillips Blvd, Ewing, NJ 08618, telephone # 1-800-223-6527, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR CMG MORTGAGE, INC., DBA CMG FINANCIAL, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, all liens, and any rights due or to become due thereon, to **CMG MORTGAGE, INC., WHOSE ADDRESS IS 3160 CROW CANYON ROAD SUITE 400, SAN RAMON, CA 84583 (888)262-0450, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust bearing the date 05/26/2021, was executed by **JAMES SNYDER A SINGLE MAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR CMG MORTGAGE, INC., DBA CMG FINANCIAL, ITS SUCCESSORS AND ASSIGNS** and recorded as **Instrument # 202110861**, in the records of Real Property of **BASTROP** County, **Texas.**

**IN WITNESS WHEREOF,** this Assignment is executed **this 26th day of July in the year 2022.**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR CMG MORTGAGE, INC., DBA CMG FINANCIAL, ITS SUCCESSORS AND ASSIGNS**

_Angela Pavao_
**ANGELA PAVAO**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 26th day of July in the year 2022, by Angela Pavao as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR CMG MORTGAGE, INC., DBA CMG FINANCIAL, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Aaron Burdick_
**AARON BURDICK**
**COMM EXPIRES: 11/22/2024**

> AARON BURDICK
> Notary Public - State of Florida
> Commission # HH 066179
> My Comm. Expires Nov 22, 2024
> Bonded through National Notary Assn.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: Cenlar FSB C/O Nationwide Title Clearing, LLC, 2100 Alt. 19 North, Palm Harbor, FL 34683
CENAV 433472148 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) DEFAULT
MIN █████████████ MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR T262207-09:45:26 [C-1] EFRMTX1



## ELECTRONICALLY RECORDED

### OFFICIAL PUBLIC RECORDS

KRISTA BARTSCH, County Clerk

Bastrop Texas

March 25, 2025 08:00:18 AM    **202505077**
FEE: $25.00

# TRANSFER AND ASSIGNMENT OF LIEN

**TEXAS**
COUNTY OF **BASTROP**
LOAN NO.:

WHEN RECORDED MAIL TO: FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned **CMG MORTGAGE, INC.**, located at **3160 CROW CANYON ROAD SUITE 400, SAN RAMON, CA 94583**, Assignor, does hereby grant, assign, and transfer without recourse, representation or warranty, expressed or implied to **FREEDOM MORTGAGE CORPORATION**, located at **951 YAMATO ROAD SUITE 175, BOCA RATON, FL 33431**, Assignee, its successors and assigns, all Assignor's rights, title and interest in and to that certain Deed of Trust or Mortgage described below.

Said Deed of Trust or Mortgage dated **MAY 26, 2021**, in the amount of **$530,000.00**, executed by **JAMES SNYDER, A SINGLE MAN**, Trustor or Grantor, to **THOMAS E. BLACK, JR.**, Original Trustee, to or for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY**, the Original Beneficiary or Grantee, recorded on **MAY 26, 2021** at Page  under Instrument No. **202110861** in the Real Property Records of the County Clerk in and for **BASTROP** County, State of **TEXAS**, said property described on said Deed of Trust or Mortgage referred to herein:

**AS DESCRIBED IN SAID DEED OF TRUST OR MORTGAGE**

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **MARCH 21, 2025**.

**CMG MORTGAGE, INC.**

CANDELARIA SALMERON, VICE PRESIDENT

STATE OF **IDAHO** COUNTY OF **BONNEVILLE** ) ss.

On **MARCH 21, 2025**, before me, KELLIE CABRERA, personally appeared **CANDELARIA SALMERON** known to me to be the VICE PRESIDENT of CMG MORTGAGE, INC. the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

KELLIE CABRERA (COMMISSION EXP. 07/02/2026)
NOTARY PUBLIC

> KELLIE CABRERA
> Notary Public - State of Idaho
> Commission Number 20202513
> My Commission Expires Jul 2, 2026

Page 1 of 1

# EXHIBIT E

**ELECTRONICALLY RECORDED**

**OFFICIAL PUBLIC RECORDS**



KRISTA BARTSCH, County Clerk
Bastrop Texas
May 08, 2023 10:43:06 AM    **202306822**
FEE: $50.00
DTRUST

**After Recording Return To:**
RUTH RUHL, P.C.
Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251
_____[Space Above This Line For Recording Data]_____

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE SECRETARY OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

███████████████████████

# PARTIAL CLAIM DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS SUBORDINATE DEED OF TRUST ("Security Instrument") is given on February 22nd, 2023. The trustor is JAMES SNYDER, A SINGLE MAN, whose address is 307 DOUBLE EAGLE RANCH DR, CEDAR CREEK, Texas 78612 ("Borrower"). The trustee is Ruth Ruhl, Esquire, whose address is 12700 Park Central Drive, Suite 850, Dallas, TX 75251 ("Trustee"). This Security Instrument is given to the Secretary of Veterans Affairs, an Officer of the United States, and whose address is Department of Veterans Affairs, Loan Guaranty Service, 3401 West End Avenue, Suite 760W, Nashville, Tennessee 37203 ("Lender"). Borrower owes Lender the principal sum, as calculated under Title 38 Code of Federal Regulations ("C.F.R."), Section 36.4805(e), of one hundred fifty seven thousand six hundred fifty five and 86/100 Dollars (U.S. $157,655.86). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on June 1st, 2061.

BORROWER MAY make prepayments for this subordinate loan, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment there will be no changes in the due date unless Lender agrees in writing to those changes.

Primary VA Guaranteed Loan No.: █████████

THIS SECURITY INSTRUMENT secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably warrants, grants and conveys to Trustee, in trust, with power of sale, the following described property located in BASTROP County, Texas, which has the address of 307 DOUBLE EAGLE RANCH DR, CEDAR CREEK, Texas 78612 ("Property Address");

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
**UNIFORM COVENANTS.**
**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2.    Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**3.    Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Veterans Affairs, Loan Guaranty Service, 3401 West End Avenue, Suite 760W, Nashville, Tennessee 37203, or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

Primary VA Guaranteed Loan No.: ▮▮▮▮▮▮

**5.    Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**7. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration if Borrower transfers title to the Property unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.  For the purposes of this Section 7, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law.  Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law.  Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time.  Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines.  Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower.  Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this Section 7, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale.  If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.**

Primary VA Guaranteed Loan No.: ████████

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph or Applicable Law.**

**8. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**9. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**10. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**11. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**12. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**
☐ **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.
☐ **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

Primary VA Guaranteed Loan No.: ███████

☐       **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐       **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds.  Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead.  Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**13. Loan Not a Home Equity Loan.  The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution.  If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 13.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and or any rider(s) executed by Borrower and recorded with it.

_2-25-2023_____
Date

_____James Fyeln_____(Seal)
JAMES SNYDER                        –Borrower

_____
Date

_____(Seal)
                                    –Borrower

_____
Date

_____(Seal)
                                    –Borrower

_____
Date

_____(Seal)
                                    –Borrower

_____
Date

_____(Seal)
                                    –Borrower

Primary VA Guaranteed Loan No.: ▮▮▮▮▮▮

State of Texas §
§
County of Bastrop §

Before me, a Notary Public, on this day personally appeared JAMES SNYDER known to me or proved to me on the oath of _____ NA or through Texas Drivers License *[description of identity card or other document]* to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed. Given under my hand and seal of office this 26 day of Feb A.D 2023 .

(Seal)

Notary Signature
Printed/Typed Name Bree Lann Hanna

Notary Public, State of Texas

My Commission Expires: Aug 31 2023

**BREE LANN HANNA**
**MY COMMISSION EXPIRES**
**AUGUST 31, 2023**
**NOTARY ID: 128724406**

---

**TEXAS PARTIAL CLAIM DEED OF TRUST**
**COVID-19 VETERANS ASSISTANCE PARTIAL CLAIM PAYMENT (COVID-VAPCP)**

# EXHIBIT F

ELECTRONICALLY RECORDED

OFFICIAL PUBLIC RECORDS

NOTICE OF LIS PENDENS

THE STATE OF TEXAS                    §

                                      §         KRISTA BARTSCH, County Clerk

COUNTY OF BASTROP                     §         Bastrop Texas

                                                July 31, 2023 02:14:59 PM   **202311436**
                                                FEE: $26.00
                                                LISPEN

NOTICE IS HEREBY GIVEN that Cause No. 2458-21; *DER Residential Community, Inc. dba Double Eagle Ranch Residential Community v. James Snyder*; In the District Court of Bastrop County, Texas, 21st Judicial District, and is now pending in such Court.

The action seeks to establish and enforce a right in real property situated in Bastrop County, Texas, legally described as:

> *Lot Three (3), Block L, Double Eagle Ranch, Section 2, according to the map or plat thereof recorded in Plat Cabinet No. 6, Page 153A, Plat Records, Bastrop County, Texas and which property is commonly known as 307 Double Eagle Ranch Road, Cedar Creek, TX 78612.*

This action seeks: (a) recovery of delinquent assessments, interest and other charges authorized by the applicable restrictive covenants and/or state law; and (b) an order foreclosing plaintiff's lien for all such delinquent charges that are secured by the plaintiff's lien on the property per the applicable restrictive covenants.

SIGNED this the 28th day of July 2023.

*DER Residential Community, Inc. dba Double Eagle Ranch Residential Community,*

_____

JEFF LIBERSAT – ATTORNEY

STATE OF TEXAS                    §
COUNTY OF TRAVIS                  §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Jeff Libersat known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 28th day of July 2023.

KATHERINE JONES
NOTARY ID #13294650-7
My Commission Expires
March 01, 2025

_____
Notary Public - State of Texas

# EXHIBIT G

FREEDOM MORTGAGE®
PLEASE DO NOT SEND PAYMENTS TO THIS ADDRESS
P.O. BOX 619063
DALLAS, TX 75261-9063

USPS CERTIFIED MAIL

9214 8969 0043 7100 3014 8223 68

JAMES SNYDER
307 DOUBLE EAGLE RANCH DR
CEDAR CREEK TX 78612-4322

March 7, 2025

Re:    Loan Number          █████████
       Collateral Address    307 DOUBLE EAGLE RNCH DR
                             CEDAR CREEK TX 78612

Dear JAMES SNYDER:

We have not received your loan payments for the period of January 1, 2025 through March 1, 2025, which means your loan is in default. This letter is a demand for payment of the past due amount as of March 7, 2025, which are:

| | |
|---|---|
| Principal, interest, & escrow | $7,868.97 |
| Late charges | $945.19 |
| Fees and costs to date | $25.00 |
| Less Amount in Suspense | $0.00 |
| | |
| Total Amount Due | $8,839.16 |

Interest and fees will continue to accrue after the date of this letter in accordance with the terms of your loan.

You must cure the default by paying the Total Amount Due by April 11, 2025. Failure to cure the default on or before the date specified in this notice will result in acceleration of the sums evidenced by the Note and secured by the Security Instrument that you executed in connection with the referenced loan, and foreclosure or sale of the secured property. You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active military service to the sender of this notice immediately.**

HUD-approved counseling is available on FHA-insured loans by calling 800-569-4287. You may also be entitled to a face-to-face interview with Freedom Mortgage Corporation if you have an FHA-insured loan. If you would like to discuss this letter and foreclosure prevention options, or arrange a face-to-face interview, we encourage you to contact our Customer Care Department immediately at 855-690-5900, Monday through Friday, from 8:00 AM–8:00 PM, and Saturday from 9:00 AM–2:00 PM, Eastern Time.

4010

Please telephone Freedom Mortgage Corporation at 855-690-5900 before you make your payment to confirm the amount you should pay.  Payments must be made in U.S. currency, made payable to Freedom Mortgage Corporation, and sent to:

**Freedom Mortgage Corporation**
**PO Box 7230**
**Pasadena CA 91109**

**You can access your loan information 24 hours a day, seven days a week by logging on to www.freedommortgage.com** or through our automated phone system at 855-690-5900.  If you need to speak with a Customer Care Representative, please call Monday through Friday 8:00 AM–8:00 PM and Saturday 9:00 AM–2:00 PM Eastern Time.

Sincerely,

Freedom Mortgage Corporation
NMLS # ███ (www.nmlsconsumeraccess.org)

**FREEDOM MORTGAGE CORPORATION IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IMPORTANT NOTICE: TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED IN BANKRUPTCY, IS SUBJECT TO THE AUTOMATIC STAY OR IS PROVIDED FOR IN A CONFIRMED PLAN, THIS COMMUNICATION IS FOR REGULATORY COMPLIANCE AND/OR INFORMATIONAL PURPOSES ONLY, AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION.**

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

4010

# EXHIBIT H

# DECLARATION OF MAILING

**iMailTracking, LLC**
9620 Ridgehaven Court, Suite A
San Diego, CA  92123

Reference No:           25TX373-0267-1
Mailing Number:      0089177-01
Type of Mailing:      Notice of Accel Supp Open

I, _____**Charlene Broussard**_____, declare as follows:

I am, and at all times herein mentioned, a citizen of the United States, over the age of eighteen years and a resident of San Diego County, California. I am not a party to the action/matter identified in the document(s) referenced below. My business address is iMailTracking, LLC, 9620 Ridgehaven Ct., Ste. A, San Diego, CA 92123.

At the request of Miller George and Suggs PLLC on 5/21/2025, I deposited in the United States mail a copy of the attached document(s), in separate sealed envelopes, in accordance with the checked mailing classes listed below, postage prepaid, to the address list in Exhibit A which is attached hereto and made a part hereof.

☐ First Class
☒ Certified
☐ First Class with Certificate of Mailing
☐ Certified with Return Receipt
☐ Certified with Return Receipt and Restricted Delivery
☐ Certified with Electronic Return Receipt
☐ Registered
☐ Registered International

Additional Services provided during the production of this mail order (if any):

None

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date and Location: 5/21/2025 San Diego, California

Charlene Broussard, Mail Production Specialist, iMailTracking, LLC

2

P.O. Box 23159
San Diego, CA 92193-3159



IMPORTANT INFORMATION
ENCLOSED

71 96900 2484 0954 8670 7

**Mailed On:** 05/21/2025
**ClientID:**    MGS_Law000756

**Order Number:**      0089177-01    CE
**Reference Number:** 25TX373-0267-1

James Snyder
307 Double Eagle Ranch Dr
Cedar Creek, TX 78612



**MILLER GEORGE & SUGGS**

**Texas Office**
6080 Tennyson Pkwy., Ste. 100
Plano, Texas 75024
Main: 972.532.0128
Fax: 214.291.5507
**Florida | Texas | Georgia**

May 21, 2025

**Via Certified Mail**

JAMES SNYDER
307 DOUBLE EAGLE RANCH DR
CEDAR CREEK, TX 78612

RE:     Property Address:   307 DOUBLE EAGLE RANCH DR, CEDAR CREEK, TX 78612
        Loan#:   ███████
        Our File #:   25TX373-0267

### NOTICE OF ACCELERATION OF LOAN MATURITY

1.  This firm has been retained by Freedom Mortgage Corporation ("Mortgage Servicer"), who is the mortgage servicer for FREEDOM MORTGAGE CORPORATION ("Mortgagee"), who is the mortgagee of your loan agreement comprised of a note and lien on the above-referenced Property.

2.  Mortgage Servicer is representing Mortgagee under a servicing agreement, which permits Mortgage Servicer to service the loan agreement. The address of Mortgagee is:

    FREEDOM MORTGAGE CORPORATION
    c/o Freedom Mortgage Corporation
    951 Yamato Road, Suite 175
    Boca Raton, FL 33431

3.  Notice of default under the terms of the loan agreement and notice of Mortgagee and Mortgage Servicer's intent to accelerate the maturity of the debt if the default was not cured were previously provided. The default has not been cured.

4.  Please take notice that the maturity date of the note is accelerated as of the date of this notice and all unpaid principal, interest, fees, charges and other recoverable amounts are now due. Payment must be made in certified funds. For further information, please call (972) 532-0128.

5.  **MILLER, GEORGE AND SUGGS, PLLC MAY BE DEEMED A DEBT COLLECTOR, AS A PORTION OF OUR PRACTICE INVOLVES THE FORECLOSURE OF LIENS AND MORTGAGES SECURING REPAYMENT OF DEBTS. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. WE ARE NOT ATTEMPTING TO COLLECT THE DEBT FROM YOU PERSONALLY AT THIS TIME. WE ARE ONLY TRYING TO FORECLOSE THE LIEN.** All obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

6.  <u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.</u>

Sincerely,

Miller, George & Suggs, PLLC

# EXHIBIT I



**FREEDOM MORTGAGE®**
P.O. Box 50485, Indianapolis, IN 46250-0485

# INTERNAL USE ONLY

JAMES SNYDER
307 DOUBLE EAGLE RANCH DR
CEDAR CREEK        TX 78612-0000

## PAYOFF STATEMENT

Freedom Mortgage Corporation                          Payoff Request Date: May 28, 2025
Customer Care Team                                      Payoff Statement Sent by: 18465
Date: May 28, 2025

Loan Number:    █████████                        Next Payment Due Date: January 1, 2025
Borrower:       JAMES SNYDER

Property:       307 DOUBLE EAGLE RNCH DR
                CEDAR CREEK        TX 78612

Loan Type:      VA

THIS STATEMENT REFLECTS THE TOTAL AMOUNT DUE UNDER THE TERMS OF THE
NOTE/SECURITY INSTRUMENT THROUGH THE CLOSING DATE WHICH IS JUNE 12, 2025. If the
obligation is not paid in full by this date, then you should obtain from us an updated payoff amount before closing.

Total Principal, Interest, and other amounts due under the Note/Security Instrument:

| Please send the following Remittance: | |
| --- | --- |
| Current Unpaid Principal | $397,343.03 |
| Accrued Interest | $8,952.49 |
| Prepayment Penalty | $ 0.00 |
| Escrow/Impound Required | $2,342.47 |
| Mortgage Insurance Premium Due | $ 0.00 |
| Less Escrow/Impound Funds | ($ 0.00) |
| Less Unapplied Funds Balance | ($ 0.00) |
| Payoff Statement Fee | $ 0.00 |
| Unpaid Late Charges | $945.19 |
| Recording Fee | $29.00 |
| Release Fee | $ 0.00 |
| Additional Items Due | $810.00 |
| Deferred Balance | $ 0.00 |
| Optional Insurance | $ 0.00 |

2.72

**FREEDOM MORTGAGE®**
P.O. Box 50485, Indianapolis, IN 46250-0485

# INTERNAL USE ONLY

| Subsidy/Buydown | $ 0.00 |
|---|---|
| **TOTAL PAYOFF DUE:** | **$410,422.18** |

The accrued interest shown above is projected through June 12, 2025.  After that date, please add an additional $46.27 amount per day.

Although this payoff quote is good through the date shown above, additional fees may accrue.  For example, if we do not receive the funds and the grace period for your next payment(s) expires, a late charge may also be assessed.

*Please note, our records indicate that you previously executed a subordinate note and mortgage (also known as a partial claim), which is also secured against the subject property. Please see the attached instructions on how to request a payoff for the subordinate note and mortgage from VA.*

A Deferred Balance may include items such as deferred Principal Balance, Late Charges, Escrow Advances, Expense Advances and Administrative Fees.

The current escrow balance is $-2,342.47. Any escrow payments scheduled to disburse prior to the payoff expiration date will be deducted from the total escrow balance. Available escrow funds will be returned to the borrower within 14 business days from the date the loan is paid in full.

*When applicable, any escrow funds credited toward the total payoff will not be returned.*

The information shown on this statement is subject to change. To ensure that you are submitting sufficient funds to pay your account in full, please contact our Customer Care Team for updated figures prior to remitting payoff funds. If your loan is referred to foreclosure this payoff statement will no longer be valid, therefore, a new payoff statement will need to be requested.

### SUBMIT PAYOFF FUNDS

**WIRE TRANSFER**
Freedom Mortgage Corporation
Reference: Payoff/Payment Department
KeyBank, 127 Public Square, Cleveland, OH
ABA: █████████
Bank Account: █████████
Borrower Name: JAMES SNYDER
Loan Number: █████████

**OVERNIGHT DELIVERIES OF PAYMENTS**
Freedom Mortgage Corporation
ATTN: Payoff Department
11988 Exit 5 Pkwy Bldg 4
Fishers, IN 46037-7939

*Please note that Freedom Mortgage requires payoffs to be received in the form of certified funds. **Personal checks will not be accepted**. Additionally, Freedom Mortgage will only accept funds to pay off the account in full. Payoff funds received that are not sufficient to pay the loan account in full will be returned.*

*Incoming wire transfers received by 4 PM Eastern Time will be credited the same day. Wires received after that time will be processed on the next business day.  Please ensure that all payoff funds submitted include the borrower's name and loan number.*

2.72

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Austin Husers on behalf of Bradley Conway
Bar No. 24055340
ahusers@mgs-legal.com
Envelope ID: 101872685
Filing Code Description: Petition
Filing Description: ORIGINAL PETITION FOR FORECLOSURE
Status as of 6/11/2025 11:38 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Austin Husers | | ahusers@mgs-legal.com | 6/11/2025 8:51:20 AM | NOT SENT |

*Received by:*
*E. Banda*
*6/13/25*

# CITATION
## CAUSE#465-850

**CLERK OF THE COURT**
Sarah Loucks, District Clerk
P.O. Box 770
804 Pecan Street
Annex Building, First Floor
Bastrop, TX 78602

### THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."

TO: UNITED STATES OF AMERICA ON BEHALF OF THE SECRETARY OF VETERANS AFFAIR
UNITED STATES ATTORNEY MARGARET LEACHMAN
601 NW LOOP 410, SUITE 600
SAN ANTONIO, TX 78216

GREETINGS: You are commanded to appear by filing a written answer to the ORIGINAL PETITION FOR FORECLOSURE of Petitioner at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service hereof, before the 465th District Court of Texas, at the courthouse in BASTROP, Texas.

 A copy of the Petition of the Petitioner accompanies this citation, in cause number 465-850 styled:

FREEDOM MORTGAGE CORPORATION
V.
JAMES SNYDER, DER RESIDENTIAL COMMUNITY, INC. DBA DOUBLE EAGLE RANCH RESIDENTIAL COMMUNITY, AND THE UNITED STATES OF AMERICA ON BEHALF OF THE SECRETARY OF VETERANS AFFAIRS

filed in said court on the on this the 6th day of June, 2025

Petitioner is represented by:

BRADLEY J. CONWAY
MILLER, GEORGE & SUGGS, PLLC
6080 TENNYSON PKWY. STE. 100
PLANO, TEXAS 75024    *Carol L Watson PSC-2139 6-13-25 11:35 AM*

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office in Bastrop, Texas, this the 11th day of June, 2025

Sarah Loucks
District Clerk, Bastrop County
P.O. Box 770
Bastrop, Texas 78602
By: /s/ Krystyn Johnston Deputy

( ) IF CHECKED, ATTACHED TO THIS CITATION IS DISCOVERY NOT FILED WITH CLERK PURSUANT TO TRCP 191.4

RETURN OF SERVICE

Cause: 465-850
Executed when copy is delivered:
This is a true copy of the original citation, was delivered to defendant _____, on the _____ day of _____, 20_____.

_____, Officer

_____, County, Texas

By:_____, Deputy

**ADDRESS FOR SERVICE**:
DEFENDANT: UNITED STATES OF AMERICA ON BEHALF OF THE SECRETARY OF VETERANS AFFAIR
UNITED STATES ATTORNEY MARGARET LEACHMAN
601 NW LOOP 410, SUITE 600
SAN ANTONIO, TX 78216

OFFICER'S RETURN

Came to hand on the _____ day of _____, 20_____, at _____, o'clock _____.m., and executed in _____ County, Texas by delivering to each of the within named defendants in person, a true copy of this Citation with the date of delivery endorsed thereon, together with the accompanying copy of the plaintiff's petition, at the following times and places, to-wit:

**Name** | **Date/Time** | **Place, Course and Distance from Courthouse**
---|---|---
_____ | _____ | _____

And not executed as to the defendant(s), _____

The diligence used in finding said defendant(s) being:
_____

and the cause or failure to execute this process is:
_____

and the information received as to the whereabouts of said defendant(s) being:
_____

**FEES**:
Serving Petition and Copy $_____
Total                    $_____

_____, Officer
_____, County, Texas

By:_____, Deputy

**Affiant**
COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.
**In accordance with Rule 107:** The officer or authorized person who serves, or attempts to serve, a citation shall sign the return.  The signature is not required to be verified.  If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:
My name is _____, my date of birth is _____, and my address is _____
            (First, Middle, Last)
_____.
(Street, City, Zip)

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

Executed in _____County, State of _____, on the _____day of _____.

_____
Declaring/Authorized Process Server

_____
(Id # & expiration of certification)